HIRAM F. LIVELY ET AL. v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

No. 1881. Decided June 25, 1909.

**1.—Taxation—Intangible Assets—Constitutional Law.**

The law providing for the assessment for taxation of the intangible assets of certain corporations by a State tax board (Act of May 16, 1907, Laws, 30th Leg., Called Session, ch. 17, p. 469, amending Act of April 17, 1905, Laws, 29th Leg., p. 351), is not in violation of article 8, section 18, of the Constitution of Texas, providing that all property shall be assessed in the county where it is situated, such property having no situs within the county. (Missouri, K. & T. Ry. Co. v. Shannon, 100 Texas, 379, followed). Nor is such Act in violation of article 8, section 1, of the Constitution, providing that taxation shall be equal and uniform. (P. 557.)

**2.—Same—Board of Equalization.**

The county authorities having no jurisdiction over the assessment of intangible assets having no situs in the county, the county board of equalization had no authority to alter the valuation fixed by the State board and apportioned to the county under the Act of May 16, 1907. (P. 557.)

**3.—Same—Injunction—Legal Remedy.**

A plaintiff seeking relief by injunction against the collection of a tax

upon its intangible assets because the valuation fixed thereon was not equal and uniform with that on other property, was not required to first apply to the county board of equalization for relief against such unequal assessment, such board having no power under the law to reduce the assessment thereof fixed by the State authorities (Act of May 16, 1907, secs. 16, 17), and the remedy by proceeding before that board for the raising of other assessments so as to equalize valuations being impracticable.    (Pp. 558-560.)

### 4.—Taxation—Equality—Constitutional Law.

Where the assessment of the intangible assets of a corporation was fixed at their full market value, while the value of all other property in the county was assessed at two-thirds of its actual value, such corporation was denied the right of equal and uniform taxation secured to it by section 1, article 8, of the State Constitution, and also the right to the equal protection of the laws· guaranteed by section 1 of the Fourteenth Amendment to the Constitution of the United States.    (P. 559.)

### 5.—Same—Act of State.

The action of the officers of a county in adopting deliberately a policy· of assessing for State and county taxes the tangible property situated therein on an estimated basis of two-thirds its actual value, when the intangible assets of the corporation were assessed at full market value, must be held to be the act of the State, the intention with which it was done was immaterial, and the corporation was entitled to relief against the enforcement of such unequal taxation.    (P. 559.)

### 6.—Same—Case Limited.

The fact that a taxpayer was not required to pay more than he should, his property not being assessed beyond its true value, did not satisfy his constitutional right to have all others owning property in the same territory and subject to like taxation bear their equal proportion of the burdens of government.    This was a substantial right which the courts will enforce. Engelke v. Schlenker, 75 Texas, 559, criticised.    (P. 559.)

### 7.—Taxation—Equality—Injunction.

Where the intangible assets of a corporation were assessed by the State authorities at their full value, and its proportion thereof set aside to a county for. taxation, but the county authorities assessed the tangible property situated in such county on the basis of two-thirds only of its actual value, the corporation could enjoin the collection of so much of the tax against it as was based on the assessment of its property at a higher proportionate value than that of others.    (P. 560.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

The railway company sued Lively and others to enjoin the collection of certain taxes, and had judgment, from which the defendants appealed.

*Robert V. Davidson,* Attorney-General, and *James D. Walthall,* Assistant, *Dwight L. Lewelling,* County Attorney, and *J. Lawson Goggans,* for appellants.—The Act does not violate the provisions of article 8, section 18, of the Constitution of Texas.    Article 8, section 18, Constitution of Texas, art. 8, secs. 1, 5, 8, 11, 14, 18; Chapter XVII, 1st Called Session, 30th Legislature; Missouri, K. & T. Ry. Co. of Texas v. Shannon, 100 Texas, 379.

The Act does not violate the provision of article 8, section 1, of the Constitution of Texas, that all taxation shall be ·equal and uniform.    Missouri, K. & T. Ry. Co. of Texas v. Shannon, 100 Texas,

379; State Railroad Tax Cases, 92 U. S., 575; Cummings v. Merchants' Nat. Bank, 101. U. S., 154; Michigan Railroad Tax Cases, 138 Fed., 223; State v. Severance, 55 Mo., 378; Gray on Limitations of Taxing Power, paragraphs 1454, 1455, 1456; Bergen & Dundee Ry. Co. v. State Board, 67 Atl., 668; Missouri, K. & T. Trust Co. v. Smart, 25 So., 446; Chicago, B. & Q. R. R. v. Richardson County, 100 N. W., 950.

Where an assessment for taxes which he believes are illegal has been made against a person by the proper officers his remedy is to pay the amount claimed under protest and sue for the recovery of the amount he feels he has been illegally required to pay. Galveston Gas Co. v. Galveston County, 54 Texas, 287.

If it is true that a party asking an injunction against the collection of taxes has no adequate remedy at law and would suffer an irreparable injury if the injunction is not granted, the identical facts showing this should be alleged and proved; a mere general allegation that the remedy at law is inadequate or that the complainants will suffer an irreparable injury is not sufficient. Blanc v. Meyer, 59 Texas, 92; Red v. Johnson, 53 Texas, 288; H. W. Metcalf Co. v. Martin, 45 So., 464, and cases cited.

The statutes of this State contemplate and provide that all taxable property should be assessed for purposes of State and county taxes for the year 1907 at its full or true market value, and a person whose property has been so assessed has no ground of complaint because other property is generally assessed at less than its full value in disobedience of the statutes. Rev. Stats., art. 5088, secs. 1, 2; Engelke v. Schlenker, 75 Texas, 559; People v. Lots in Ashley, 13 N. E., 556; Alexander v. Thomas, 12 So., 708; McCurdy v. Prugh, 55 N. E., 154.

The State has the authority to provide that the intangible assets of railroad companies shall be valued by a State tax board, and to also provide that the valuations fixed by said board shall be final. Having exercised this authority, it is clear that the findings of this board can not be set aside or modified in a proceeding to which it is in no way made a party, and in no event can this be done in the absence of allegation and proof of irregularity, illegality or invalidity (assuming merely for the sake of argument that this would afford sufficient ground for such action) of some character in the action of the board, even if there has been a neglect or failure of duty on the part of some other board or boards. St. Louis, I. M. & S. Ry. Co. v. Worthen, 7 L. R. A., 374; Sawyer v. Dooley, 32 Pac., 437; Illinois & St. L. R. & Coal Co. v. Stookey, 13 N. E., 516; Louisville Ry. Co. v. Commonwealth, 49 S. W., 486; Paducah Street Ry. Co. v. McCracken County, 49 S. W., 178.

Conceding for purposes of argument only, that such proof would entitle a party to an injunction against the collection of taxes, it is certainly necessary, in order to obtain such relief, on account of over valuation, to first plead and prove that he applied for relief at the hands of the board of equalization, or show proper excuse for such failure. Rosenberg v. Weekes, 67 Texas, 584; Duck v. Peeler, 74 Texas, 271; Rio Grande Ry. Co. v. Scanlan, 44 Texas, 649;

Houston & T. C. Ry. Co. v. County of Presidio, 53 Texas, 518; International & G. N. Ry. Co. v. Smith County, 54 Texas, 12; Clawson Lumber Co. v. Jones, 49 S. W., 909; Swenson v. McLaren, 2 Texas Civ. App., 331; Moreland v. Wynne, 62 S. W., 1093; Traverse Beach Association v. Elmwood Tp., 105 N. W., 30, 768; In re Atwood Lumber Co., 105 N. W., 276; Cummins v. Webber, 75 N. E., 1041.

The Act of the State tax board can not be set aside by a collateral attack which purportedly seeks to set aside an act of the board of equalization of the county. The act of the State tax board can not be adjudged invalid and held for naught when it has acted in strict conformity to the law because other officers of the State might have disregarded the law in the assessment and equalization of property for taxation. Louisville R. R. Co. v. Commonwealth, 49 S. W., 486; City of Lowell v. County Commissioners, 25 N. E., 470; Central R. R. Co. v. State Board of Assessors, 2 Atl., 792.

Appellee having failed to seek relief from the board of equalization, it can not now maintain an action to enjoin the collection of a portion of the tax upon its intangible assets. It had an adequate remedy at law, and having failed to avail itself of this remedy, it is now estopped to ask relief from a disproportionate valuation of its property, if any such exists. Duck v. Peeler, 74 Texas, 268; Clawson Lumber Co. v. Jones, 49 S. W. 909; Rio Grande R. R. Co. v. Scanlan, 44 Texas, 649; Houston & T. C. Ry. Co. v. Presidio County, 53 Texas, 518; Carroll v. Alsup, 64 S. W., 193; Dundee v. Charlton, 32 Fed., 195; Wagoner v. Loomis, 37 Ohio St., 571; New York, etc., v. Gleason, 13 N. E., 204; Kempner v. Lots in the city of Ashley, 13 N. E., 556; Northern P. Ry. Co. v. Patterson, 24 Pac., 704.

Fraud on the part of the board of equalization will not be presumed. It must be alleged and proved. Custom and usage of undervaluation of property for taxation does not establish fraud. Fraud must be clearly established before equity will set aside an act of the board of equalization. Johnson v. Holland, 43 S. W., 71; Mann v. State, 18 Texas Civ. App., 701; Duck v. Peeler, 74 Texas, 268; Clawson Lumber Co. v. Jones, 49 S. W., 909; K. & H. Bridge Co. v. Bertschi, 44 N. E., 206; Wagoner v. Loomis, 37 Ohio St., 571; Louisville R. R. Co. v. Commonwealth, 49 S. W., 486.

Appellee is not entitled to relief only because of the mere custom and usage of under-valuation of property for taxation by the local assessing officers. Such an under-valuation must be intentionally and designedly done to discriminate against appellee to entitle appellee to any relief. Engelke v. Schlenker, 75 Texas, 559; Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S., 585; Coulter v. Louisville & N. R. R. Co., 196 U. S., 599; Albuquerque Bank v. Perea, 147 U. S., 87; New York State v. Barker, 179 U. S., 279; National Bank v. Kimball, 103 U. S., 732; Louisville & N. R. R. Co. v. Coulter, 131 Fed., 288; Michigan Railroad Tax Cases, 138 Fed., 223; Louisville R. R. Co. v. Commonwealth, 49 S. W., 486; Illinois & St. L. R. and Coal Co. v. Stookey, 13 N. E., 516; McCurdy v. Prugh, 55 N. E., 154; Paducah Street Ry. Co. v. McCracken County, 49 S. W., 178; K. & H. Bridge Co. v. Bertschi, 44 N. E., 206; Alexander v.

Thomas, 12 So., 708; Wagoner v. Loomis, 37 Ohio St., 571; Penob-
scott Chemical Fibre Co. v. Inhabitants of the Town of Bradley, 59
Atl., 83.

Under the Constitution and statutes in effect in Texas when
State and county assessments for the year 1907 were made, a person
or corporation whose property was not assessed above its full value
for State and county purposes could not maintain an injunction on
the ground alone that property generally throughout the county com-
plained of was assessed at less than its full value; and especially
is this true where there is other property in the county assessed at
its full value.   Before appellee is entitled to relief it must allege
and prove:  First:  An injury to it in its property by unequal and
ununiform taxation.   Second:   That such injury is the result of
the corrupt or fraudulent act of the board of equalization of Dallas
County, Texas.   Johnson v. Holland, 43 S. W., 71; Mann v. State,
18 Texas Civ. App., 701; K. & H. Bridge Co. v. Bertschi, 44 N. E.,
206; Carroll v. Alsup, 64 S. W., 193; Louisville R. R. Co. v.
Commonwealth, 49 S. W., 486; Illinois & St. L. R. & Coal Co. v.
Stookey, 13 N. E., 516; Wagoner v. Loomis, 37 Ohio St., 571.

The doctrine of estoppel applies in tax matters as well as in
other proceedings.   Millar v. Douglass, 42 Texas, 290; Moody v.
Galveston, 50 S. W., 482; City of Houston v. Stewart, 90 S. W.,
49; Dallas Title & Trust Co. v. Oak Cliff, 8 Texas Civ. App., 217;
Central Pac. R. Co. v. California, 162 U. S., 114; Lane v. March,
33 La. Ann., 557.

In the matter of the assessment and collection of taxes for State
purposes the State is the unit of taxation and constitutes a taxing
district.   In making any attack on the amount of State taxes due
on account of an alleged over-valuation (assuming that this would
avail if proved) as compared with other property, it is necessary
to show conditions prevailing in this respect in a much wider scope
of territory than in one of the 244 counties of the State, especially
when complainant's property is located in a great number of coun-
ties.   Norris v. City of Waco, 57 Texas, 635-641; Cooley on Taxa-
tion (3d ed.), 420; New York v. Barker, 179 U. S., 286; Chicago,
B. & Q. R. Co. v. Board of Commissioners of Atchison County, 54
Kans., 781.

The collection of revenue for its maintenance and support, to-
gether with the furtherance of its various enterprises, is universally
recognized as one of the most important functions of the govern-
ment, and any effort to restrain such collections is regarded with
disfavor.   This being true, a strong case must be made out before
equity will interfere with the efforts of the duly constituted officers
to make these collections.   Red v. Johnson, 53 Texas, 288; Rio
Grande R. R. Co. v. Scanlan, 44 Texas, 649; International & G.
N. Ry. Co. v. Smith County, 54 Texas, 12-16; Gray v. Board of
School Inspectors, 83 N. E., 95; Hacker v. Howe, 101 N. W., 259;
Royer Wheel Co. v. Taylor County, 47 S. W., 876; City of Coving-
ton v. Shinkle, 74 S. W., 652.

Before an injunction can be granted against the collection of
taxes assessed, or an assessment thereof set aside, modified or an-

nulled by the court it should be alleged and proved that application was made at the proper time and in the proper way for relief at the hands of the assessing board and refused there, or proper excuse must be shown for such failure.    There is a presumption in favor of the regularity of official action.    Houston & T. C. R. Co. v. County of Presidio, 53 Texas, 518; International & G. N. R. Co. v. Smith County, 54 Texas, 12; Rio Grande R. R. Co. v. Scanlan, 44 Texas, 649; Missouri, K. & T. R. Co. of Texas v. Shannon, 100 Texas, 379; Wagoner v. Loomis, 37 Ohio St., 571; Carroll v. Alsup, 64 S. W., 193; Hacker v. Howe, 101 N. W., 259-261; Coxe Bros. v. Salomon, 59 N. E., 422; State v. Taylor, 35 N. J. Law, 189.

Where a statute which purports to deprive a certain board of power is unconstitutional and therefore void, the board still retains, unimpaired, the power it possessed before the attempted enactment and all persons are legally charged with notice of this⁻effect.    Norton v. Shelby County, 118 U. S., 425; Cooley's Const. Lim., page 422, and cases cited.

*Coke, Miller & Coke, A. H. McKnight* and *Thomas & Rhea,* for appellee.—Sections 16 and 17 of the Act in controversy construed as requiring the taxation of intangible assets at their full market value, when the board of equalization of the county determined the tax, and does intentionally tax all other property in the county (except money) at less than its full value, is in violation of section 18, article 8, of the Constitution of Texas.

Without some one authority to equalize the values of property, especially where the value of different kinds of property is fixed by different officers, there can not be equality and uniformity in taxation, and equality and uniformity is the one dominant feature in the taxation article of our Constitution.    This one authority in Texas is the board of equalization, and the Constitution having conferred powers and imposed duties upon the board, the Legislature can not take them away.

The State Constitution has enjoined upon the Legislature the duty of providing for the equalization of the valuation of property and constituted the Commissioners Court as a board of equalization, and the Legislature has not the power to deprive such board of their authority or to delegate their powers to other officers.    State Constitution, art. 5, sec. 18; art. 8, sec 18; State v. Moore, 57 Texas, 309; State v. International & G. N., 89 Texas, 562; Harris v. Stewart, 91 Texas, 133; Willis v. Owen, 43 Texas, 51; State v. Tonella, 70 Miss., 701; Houghton v. Austin, 47 Cal., 646; Assessment Board v. Alabama Central Railway Co., 59 Ala., 557.; People v. Lothrop, 3 Colo., 463; Missouri, K. & T. v. Shannon, 100 Texas, 379.

Conceding the Act in question to be valid in its entirety, yet if the board of equalization in equalizing the value of other property designedly and intentionally violates the law, and thus, by systematic undervaluation of other property, discriminates against a class of property so that the constitutional guaranty of equality is violated, the class so discriminated against is entitled to relief from such

burden.  State Constitution, art. 8, sec. 1; Missouri, K. & T. v. Shannon, 100 Texas, 379; Cummings v. Merchants Nat. Bank, 101 U. S., 153; Taylor v. Louisville & N. Ry. Co., 88 Fed., 350; Raymond v. Chicago Union Traction Co., 207 U. S., 20; Andrews v. King County, 22 Am. St. Rep., 136; Ex parte Ft. Smith & Van Buren Bridge Co., 36 S. W., 1060; Chicago, B. & Q. v. Atchison, 39 Pac., 1039.

Equality and uniformity in taxation means equality of burden; and where the property of one class of persons is intentionally taxed at its full value, while all other property in the county is designedly and intentionally taxed at two-thirds of its value, there is, as to the persons required to pay taxes on the full valuation, a denial of the equal protection of the law, contrary to section 1 of the Fourteenth Amendment to the Constitution of the United States.  Raymond v. Chicago Union Traction Co., 207 U. S., 20; Railroad Tax Cases, 13 Fed., 722; Nashville, C. & St. L. v. Taylor, 86 Fed., 168.

The essential idea of equality and uniformity is that each person's burden of taxation shall be in proportion to the value of his property and the fact that appellee's property is admitted to be assessed at its real value, will not deprive it of the constitutional guaranty, if by the systematic undervaluation of other property it is compelled to bear more than its just burden of taxation.

A customary intentional undervaluation of a class of property by the assessing officers, knowing that other classes of property will and must be assessed at their full value, is in law a fraud against the taxpayer discriminated against.  Johnson v. Holland, 43 S. W., 71; Cummings v. Merchants Nat. Bank, 101 U. S., 153; Andrews v. King County, 22 Am. St. Rep., 136; Chicago, B. & Q. v. Atchison County, 39 Pac., 1039; Ex parte Ft. Smith & Van Buren Bridge Co., 36 S. W., 1060.

The equity power of the court having been invoked to set aside the fraudulent act of the board of equalization, equity would retain jurisdiction for all purposes.  Willis v. Gordon, 22 Texas, 243; Witt v. Kaufman, 25 Texas Supp., 384; Stein v. Frieberg, 64 Texas, 271.

The payment of the illegal taxes under the circumstances involved in this case would constitute a voluntary payment.  Davies v. Galveston, 41 S. W., 145; 27 Am. Ency. of Law, 760.

In courts administering both law and equity, the rules denying equitable relief are not as rigidly adhered to as in those jurisdictions in which law and equity are administered by different courts.  Sumner v. Crawford, 91 Texas, 129.

Appellee was entitled to an injunction under article 2989 of the Revised Statutes, even though it had an adequate remedy at law.  Sumner v. Crawford, 91 Texas, 129; McFarland v. Wilder, 54 S. W., 267; Smith v. Carroll, 66 S. W., 863.

Appellee was under no obligation to ask or demand of the board of equalization any relief other than such as was in fact demanded.

An application to the board of equalization it is admitted would have been refused and appellee was not required to do a vain thing.

Appellee was not authorized to appear before the board of equaliza-

tion with reference to anyone's property except its own; without such authority an appeal to the board of equalization would have afforded no relief.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified questions from Court of Civil Appeals of the Fifth Supreme Judicial District, as follows:

"This is a suit brought by the Missouri, Kansas & Texas Railway Company of Texas, appellee, against Hiram F. Lively, County Judge of Dallas County, Texas; R. W. Eaton, H. H. Bennett, C. D. Smith and W. H. Pippin, county commissioners of Dallas County, Texas, constituting the board of equalization of said Dallas County, and Henry W. Jones, tax collector of Dallas County, each in his official capacity, to set aside alleged acts of the board of equalization of said county and to enjoin the said tax collector from collecting or attempting to collect a portion of the tax upon the intangible assets of appellee.

"Appellee alleged in its petition, in substance, that the State tax board, acting under an Act of the Thirtieth Legislature, being chapter 17 of the General Laws of the First Called Session, fixed, determined and declared the value of its intangible assets at the full and fair market value thereof, and more than the full and fair market value of the same, and so apportioned to said county said assets, and that the tax assessor of said county has placed, set down and listed said intangible assets upon the tax rolls of said county at the value fixed, determined, declared and certified by the State tax board and that the commissioners court of said county sitting as a board of equalization approved the roll of the tax assessor which contained the intangible assets of appellee as apportioned to said county at the full and fair market value thereof, etc.; that the property of taxpayers generally throughout the county for the year 1907, and for several years prior thereto, had been assessed, equalized and placed on the tax rolls for taxing purposes at not exceeding 50 percent of its value; that said undervaluation of property generally was by virtue of a fixed and established custom, usage, design and intention; that the act of the board of equalization in so equalizing, or purporting to equalize, the property to said county and in approving the lists of the tax assessor containing the intangible assets at full value was intentional, arbitrary and fraudulent, and plaintiff was by said act unjustly, arbitrarily and illegally discriminated against.

"The petition does not allege that the plaintiff sought before the board of equalization of Dallas County to have the value of its intangible assets reduced or to have advanced the valuation of all other property in the county to its true value in money. Nor does said petition show any excuse for plaintiff's failure to do so.

"The material facts are as follows: The plaintiff is a railway corporation and owns and operates a line of railway, beginning at the Texas State line about five miles north of the city of Denison, Grayson County, Texas, and extending into and through Dallas County in said State. The defendants hold and have held for more

than one year prior to January 27, 1908, their respective offices of county judge, county commissioners and tax collector of Dallas County, Texas. Plaintiff's line of railway extending into and through said Dallas County, including the right of way, roadbed, superstructure, depots and grounds upon which the said depots are situate, and all shops and fixtures of every kind used in operating said line of road, was duly rendered and assessed for taxation in said county of Dallas for the year 1907 and was duly placed on the tax rolls of said county and approved by the board of equalization for said county at a valuation of $482,890. The rolling stock of plaintiff was duly assessed for taxes for that year in Dallas County, Texas, at a valuation of $795,568, and $35,700 of the amount was duly apportioned by the Comptroller of Public Accounts to the said Dallas County. The State tax board of this State, claiming to act under and by virtue of an Act of the Twenty-ninth Legislature of said State, as amended by the Thirtieth Legislature of Texas, finally determined and fixed the value of plaintiff's intangible assets at the sum of $22,420,000, and apportioned of said amount the sum of $1,169,300 to Dallas County, which sum so fixed and apportioned constitutes and represents the full and fair market value of said intangible assets in said Dallas County. The commissioners court of said Dallas County, Texas, as required by law, met as a board of equalization on the 10th day of June, 1907, and after having inspected, corrected and equalized the tax lists and books of the tax assessor of said county, approved the same; and the property of plaintiff as so equalized and the assessment thereof approved by the board of equalization, was thereafter by the assessor placed on the tax rolls of said county at the following valuation: Plaintiff's tangible property at the sum of $518,590. Its intangible property at the sum of $1,169,300.

"The manner, custom and habit of assessing property for taxation in Dallas County, Texas, has been as follows: For the year 1907 all property situate in said county, excepting money and the intangible assets of railway companies, was assessed, equalized and placed on the tax rolls for taxation at an average valuation of 57 percent of its fair market value. The tax assessor of Dallas County in assessing the property other than money and intangible assets in said county intended and undertook to assess and place the same on the tax rolls for taxation purposes at 66 2-3 percent of its fair market value, and the board of equalization of said county approved said valuation, and when the assessor was assessing said property, and when the board of equalization was approving same, the said assessor and board of equalization understood that the said property was being assessed at 66 2-3 percent of its fair market value, and if it was not so assessed, it was a mistake or error in the judgment of said assessor and said board. A like custom and habit had been in vogue and effect in Dallas County with reference to the assessing and equalization of property for taxation for several years prior to the year 1907, and said manner and method had been carried on and was for the year 1907, followed by virtue of a fixed and established custom and usage. The bank stock in Dallas County was for the

year 1907, and has been for a long number of years thereto, assessed at 66 2-3 percent of its fair market value, arrived at upon the basis of accepting the face value of the stock, together with the surplus of the bank, as representing the fair market value of its stock. In a few isolated cases real estate was in Dallas County for the year 1907 assessed at its fair market value. There were special reasons for so doing in these cases, however, the general effort being to tax land at the valuation above stated. In a few instances land was, in Dallas County, assessed for the year 1907, and for many years prior thereto, at not exceeding 25 or 30 percent of its fair market value. In Dallas County for the year 1907, and for many years prior thereto, money was taxed at its full face value, and for the year 1907 there was taxed in Dallas County money amounting to $846,250, which said sum represented but a small proportion of the money in said county subject to taxation as shown by bank reports. The custom herein referred to with reference to taxing property at 66 2-3 percent of its fair market value is not the result of any agreement or understanding between the tax assessor of Dallas County and the board of equalization of same, or between the tax assessor and the said board, or either of them, with any other officer of the State or county.

"The custom above referred to with reference to the taxation of the property in general in Dallas County does not apply to the intangible assets of railway companies, but for the year 1907 the tax assessor of said Dallas County did place, set down and list the intangible assets of plaintiff and other railway companies in said Dallas County at the full and fair market value thereof, as fixed, determined and declared, apportioned and certified by the said State tax board, and said board of equalization approved the assessment lists and books of the said tax assessor, showing the value of same at the amount fixed, determined, apportioned and certified to the tax assessor by the State tax board, and said board of equalization at the time said books and lists were approved, as aforesaid, understood that the said intangible assets had been fixed and declared by the said State tax board as their full and fair market value. The plaintiff appeared before the board of equalization of Dallas County a time or two in connection with the assessment of its property in response to notice from the board to appear and show cause why its rendition should not be raised, but the plaintiff did not appear before the said board of equalization and make demand that the value on its intangible assets be reduced, and the plaintiff did not so appear because it understood that if its said application had been made it would have been refused, and further, that said application would have been refused if made, by reason of the provisions of sections 16 and 17 of chapter 17 of the General Laws of the First Called Session of the Thirtieth Legislature of the State of Texas. The plaintiff herein, when before the board of equalization of Dallas County, Texas, for the year 1907, in response to said notice, urged as one reason why the value of its other property, for the purpose of taxation, should not be raised, the fact that it would have to pay taxes on a high valuation of its intangible assets. But the said

board of equalization did not consider this argument in any wise, in fixing the value of the tangible property of plaintiff and raised the valuation as rendered $200 per mile. The tangible property of plaintiff in Dallas County, Texas, for the year 1907 was and is assessed for taxation at as high a percent of its full and fair market value as other property in said county was and is assessed, but said tangible property of plaintiff in said county is not assessed at a higher percent of its full and fair market value than is the tangible property of other railway companies in said county. This, however, does not apply to the Texas & New Orleans Railway Company and the Lancaster Tap. The plaintiff had tendered to the defendant, Henry W. Jones, tax collector of Dallas County, Texas, the sum of $4,382.08, in full of all State and county taxes justly due by it in said county for the year 1907 on its tangible property therein, which said sum the said tax collector has accepted and received in satisfaction of said taxes on plaintiff's tangible property, and the plaintiff has further tendered to said defendant, Henry W. Jones, the sum of $4,940.30, in satisfaction of the State and county taxes as justly due by it on its intangible assets in said county for the year 1907, or to be by him received on account for said taxes, which said sum the said tax collector accepted and receipted plaintiff for on account, but has demanded that it pay to him the said sum of $9,880.59, the same being the full amount assessed against said intangible assets for the year 1907, as shown by the said tax rolls in his hands. The plaintiff has paid said sum of $4,940.30, being the amount which it alleges is justly due as taxes for the year 1907, on said intangible assets in said county, and offers to pay any other fair sum which the court, upon hearing, may determine to be justly due from it for taxes in said county for the year 1907 on its intangible assets.

"Unless legally restrained, H. W. Jones as tax collector of Dallas County will proceed to collect said taxes in the amount claimed by him to be due as stated.

"All railway companies having intangible assets in Dallas County, except the following: Dallas Terminal & Union Depot Company, and possibly one other, have paid in full their taxes on their intangible assets in Dallas County for the year 1907, at the value fixed by the State tax board as shown by the tax collector's roll.

"Appellee paid to the tax collector of Dallas County, Texas, the taxes upon its intangible assets for said county at 50 percent of the value of same, which amount was accepted by the tax collector and receipted for on account, as stated, and the injunction sought was to restrain the collection of the remaining taxes upon 50 percent of the value of said intangible assets. The appellants demurred generally and specially to appellee's petition, and the demurrers were overruled. The case was submitted to the court without a jury upon an agreed statement of facts, from which it appeared that property generally in the county had been assessed and equalized for taxation at a general average of 57 percent of its value. The effort being to assess at 66 2-3 percent of its value. The appellee having paid in court the difference between the 50 percent and the 66 2-3 per-

.cent, the court rendered judgment for the appellee, setting aside the act of the board of equalization of Dallas County in equalizing the value of the intangible assets of appellee at full value and restraining the tax collector of the county from collecting or attempting to collect from the appellee any tax upon its intangible assets in excess of the 66 2-3 percent paid.

"From this judgment appellants have perfected an appeal to this court.

"The members of this court are not agreed upon a decision of some of the issues of law arising upon the appeal, and, in view of that fact and of the great importance of the matters involved, we deem it advisable to certify the questions set out below to the Honorable Supreme Court of Texas for adjudication.

"Question 1.   Is the Act of the Thirtieth Legislature, passed at its called session in 1907, approved May 16, 1907 (Laws 1907, page 469), and amending an Act of the Twenty-ninth Legislature, approved April 17, 1905, providing for the taxing of the intangible assets of certain corporations, and especially sections 16 and 17 of said first mentioned Act, repugnant to or violative of article 8, section 18, of the Constitution of Texas?

"Question 2.   Does the Act of the Legislature in question violate article 8, section 1, of the Constitution of Texas, that taxation shall be equal and uniform?

"Question 3.   The plaintiff having failed to seek relief from the board of equalization by asking for a reduction in the valuation of its intangible assets or for an increase in the valuation placed on other property generally, can it maintain an action to enjoin the collection of a portion of the tax upon its intangible assets?   Or, in other words, did appellee have a full, complete and adequate remedy at law?

"Question 4.   Was plaintiff entitled to the relief sought and obtained by the judgment of the District Court, under the facts stated, on the ground that its intangible assets had been assessed at their full and fair market value or real value, while other property of Dallas County was generally assessed by the tax assessor of said county and approved by the commissioners court of said county, sitting as a board of equalization, at less than its full value in disobedience to the statute?

"Question 5.   If the State tax board fixed, determined and assessed plaintiff's intangible assets at their full and fair market value or real value, and so certified such valuation to the tax assessor of Dallas County, and other property generally, in Dallas County, was intentionally and in pursuance of a fixed and established custom and usage valued and assessed for taxation by the local assessing officers of said county at less than its full and fair market value or real value, was appellee entitled to maintain this suit and obtain the relief sought?

"Question 6.   Under the facts stated, did the trial court err in rendering judgment in favor of the plaintiff perpetuating the injunction in this case and granting to it the relief sought?"

To the first and second questions propounded we answer, that the Act of the 30th Legislature, referred to in the questions, is not in conflict with the State Constitution in the particulars mentioned.

In Missouri, K. & T. Ry. Co. v. Shannon, 100 Texas, 379, it was contended that by article 8, section 11, of the Constitution of the State, all property must be assessed in the county in which it was situated, and by section 14 of that article the tax assessor and collector for the county was alone empowered to assess the value of such property. This court held that the intangible assets of a railroad company had not a situs in any county through which the road passed, and that, therefore, the provisions of sections 11 and 14 of article 8 of the Constitution did not apply. Those sections were construed as governing and controlling such property as had a situs within a given county. We are still of the opinion that was the correct construction of the Constitution and that the Legislature had the power to create a State board for the purpose of assessing the intangible assets of the corporations. If the assessor and collector of the county had no jurisdiction to assess the intangible assets of the railroad company, then it must be held that the board of equalization provided for in section 18 of said article could have no authority over the assessment made by the State board organized by the Legislature. The equalization referred to in section 18 is of the character of property which is required to be assessed in the county under section 11. The Legislature having authority then to create the board to assess the intangible assets of the railroad corporations for the whole State and to distribute it among the counties, had likewise authority to prohibit an interference with that assessment by the county board and to require the observance and enforcement of it by the local county officers.

To the third question we answer, that it was not necessary for the railroad company to apply to the board of equalization of Dallas County for relief, because that board had no power to grant any such relief. Sections 16 and 17 of the Act of 1907 read as follows:

"Section 16. . . . Such County Tax Collector shall extend and prorate upon said rolls the State and County taxes upon all such intangible assets in the same manner as taxes upon other property are extended and prorated. Said assessment, valuation and apportionment of such intangible assets so fixed, determined, declared and certified by such State Tax Board shall not be subject to review, modification or change by the Tax Assessor of such County, nor by the Board of Equalization of such County; and the State and County taxes thereon shall be collected by the Tax Collector of such County and accounted for by him in the same manner and under the same penalties as taxes upon other property."

"Section 17. Any County Tax Assessor who shall violate or in any respect fail to comply with any of the provisions of this Act, and any member of any Board of Equalization and any County Tax Assessor who shall modify or change or vote to modify or change in any manner whatsoever the finding, valuation or apportionment of any of said intangible assets as so fixed, determined, declared and certified by said State Tax Board, shall be deemed guilty

of a misdemeanor and upon conviction thereof shall be fined not less than one hundred nor more than one thousand dollars."

These sections of that Act forbid the tax assessor and the board of equalization of Dallas County to interfere with the assessment made by the State board. In order to secure the equal protection of the law by having other property taxed at the same ratio as its intangible assets the railroad company would have to go before the board of equalization of the county and give notice to every taxpayer to appear and to enter upon an examination of each assessment to ascertain how much the assessment of each should be increased. It is not necessary to say that this would be impracticable.

The substance of the fourth and fifth questions are embraced in the sixth, and we will include the three in one answer.

Article 8, section 1, of the Constitution, contains this language: "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

The rule announced by that provision is "equality and uniformity." To secure this "uniform and equal" taxation, the same sentence prescribes that the property of all persons and corporations, other than municipal, "shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." This is a clearly expressed purpose, that the officers charged with the assessment of property shall in the manner prescribed by law ascertain its value. "The value of the property is to be determined by what it can be bought and sold for." (New York State v. Barker, 179 U. S., 285.) If it means full market value when applied to the intangible assets of a railroad company, it means the same thing when applied to land, horses, etc: The standard of uniformity prescribed by the Constitution being the value of the property, taxation can not be in the same proportion to the value of the property, unless the value of all property is ascertained by the same standard. The value of the intangible assets of appellee being fixed at their full value and the value of all other property in Dallas County being assessed at 66 2-3 percent of its value, appellee was denied the right of equal and uniform taxation secured to it by the Constitution of the State.

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The facts certified show that the assessment of the property of the people of Dallas County and the assessment of the intangible assets of the appellee were not made according to the same rule or standard of value, and appellee was denied, by such action of the officers, the equal protection of the Constitution and laws of the State, contrary to and in violation of the above quoted section 1 of the Fourteenth Amendment to the Constitution of the United States.

It is apparent that the facts show a deprivation of the same right which is secured by both State and Federal Constitutions, therefore

decisions by the courts, whether based upon the fourteenth amendment or upon provisions of the State Constitutions similar to ours are equally applicable to this case.

It is objected that the wrong done by the officers of Dallas County was not the act of the State, and therefore the appellee had no right to an injunction. The facts certified show conclusively that the tax assessors and the board of equalization of Dallas County for a number of years had adopted a rule for the assessment of property situated in that county by which it was assessed at 66 2-3 percent of its real value, except money and the intangible assets of railroad companies, and possibly a few isolated exceptions not necessary to mention. The intangible assets of the appellee were assessed and placed upon the roll at one hundred cents on the dollar. It is evident that this was a deliberate scheme on the part of the officers of Dallas County by which the assessment was made at the proportion of its value stated and there is nothing in the case to indicate that there was any mistake on the part of the officers. It was the deliberately adopted policy to so discriminate between the different classes of property in the assessment for taxation. It is not necessary that the officers in so discriminating should have intended specifically to injure the appellee or other railroad companies. It is sufficient that by their action they denied the appellee the equal protection of the Constitution and laws of the State. The intention with which the acts were done is of no consequence. Such deliberate action on the part of officers charged with the enforcement of the law must be held to be the act of the State and the appellee was entitled to relief against the enforcement of the excessive assessment. (Raymond v. Chicago U. T. Co., 207 U. S., 20; Chicago, B. & Q. Ry. Co. v. Board of Com'rs (Kans.), 39 Pac., 1039; Andrews v. King Co., 22 Am. St., 136; Taylor v. Louisville & N. Ry. Co., 88 Fed. Rep., 365.)

We are referred by counsel for appellant to the case of Engelke v. Schlenker, 75 Texas, 559. In that case a suit was brought to enjoin the collection of taxes levied on shares of National Bank stock on the ground that the assessment of taxes was in violation of the Constitution of this State as well as the Act of Congress forbidding a higher rate of taxation on National Bank stock than of other money capital. Judge Henry delivered the opinion of this court and in the course of the opinion it is said that the plaintiff had failed to make proof of the facts alleged, and Judge Henry said: "The court correctly concluded that it (the unequal assessment) was not established. Even if it had been established it could not have properly affected the result of this suit. It appears that the appellant's property was not assessed beyond its true value." This was dictum and manifestly without due consideration of the question. The learned judge adopted the view, which is urged in this case, that the injury complained of consisted in requiring the complainant to pay taxes on the full value of its shares when, in fact, the wrong consisted in that case as in this in denying the appellee the right to have other property owners in the county to pay taxes in the same proportion upon their property as it was required to pay. The fact that appellee was not required to pay more than it should does not satisfy

the constitutional right to have all others owning property in the same territory and subject to like taxation to bear their equal portion of the burden of government. That is a substantial right that may be asserted and enforced in the courts.

Counsel for the appellant object to the reduction of the value of appellee's property as assessed by the State board because that assessment was made in conformity to the Constitution and laws of the State and was therefore valid. It is claimed that it is not permissible to overturn this valid assessment and to base the judgment of the court upon that which was made contrary to the laws and Constitution. That is a plausible proposition and would be applicable if the object of this proceeding were to enforce the rights of the appellee to a fair valuation of its property. But, as stated before in this opinion, the wrong which was inflicted upon the appellee was not in requiring it to pay taxes upon the full value of its property, but in denying to it the, equality of taxation secured by the Constitution, which equality of taxation necessarily depends upon uniformity of assessment. In administering the remedy the court must take the course which is most practical to secure uniformity of valuation of the property to be taxed. This may be done either by increasing the assessment of each property owner in the county to its full value and to collect from each the taxes upon this full value, or to reduce the assessment of the intangible assets of the railroad company to 66 2-3 percent on the one hundred dollars of its assessed value. The court will adopt that plan which is most feasible and calculated to secure justice to the parties. The same question arose in the case of Taylor v. Louisville & N. R. R. Co., 88 Fed. Rep., 364. The learned judge who presided at the trial of that case recognized the difficulty and solved it, announcing his conclusion in the following forcible and clear language:

"How is it to be remedied? It is said on behalf of the defendants that the only method consistent with the Constitution is by raising the assessments of the real and personal property. This is no remedy at all. It has been suggested (but we can not regard the suggestion as a serious one) that the railroad companies of the State should go before the taxing authorities of each ·county, and, after notifying each taxpayer, attempt to secure an increase in the total tax assessment of the real and personal property of the State from $312,000,000 to $416,000,000. The absolute futility of such a course, the enormous expense, and the length of time necessary in attempting to follow it, need no comment. . . . Therefore, to enjoin the enforcement of the prescribed method of assessment as to one species of property, when there is a departure from it as to all others, if the injunction secures uniformity as to all, is not so great a violation of the method· really prescribed as that involved in a continuance of the existing conditions, and the denial of relief to the injured taxpayer. The court is placed in a dilemna, from which it can only escape by taking that path which, while it involves a nominal departure from the letter of the law, does injury to no one, and secures that uniformity of tax burden which was the sole end of the Constitution. To hold otherwise is to· make the restrictions of the Constitution instruments for defeating the very purpose they were intended to subserve. It is to stick in the·

bark, and to be blind to the substance of things. It is to sacrifice justice to its incident."

It would be utterly impracticable to increase the assessment of all other property owners in Dallas County to its full value, therefore a court of equity will adopt the other method, reducing the assessment made by the State board to the same proportion of value as was placed upon the mass of property in the county. In doing this the assessment made by the State board is not overturned, but for the purpose of adjusting the rights of these parties is treated as the taxable value of the intangible assets just as the taxable value of the property of Dallas County was treated as the basis upon which to apportion the tax, that is, the taxes will be levied upon the same ratio of value, 66 2-3 cents on the dollar, as was the general assessment made for county purposes.

It appearing that the appellee has paid all the taxes due from it to the county and State, the court correctly entered a judgment perpetuating the injunction against the collection of taxes on the excess of valuation of the intangible assets of the appellee, and we answer the 6th question in the negative.