CHICAGO, R. I. & G. RY. CO. v. RATLIFF et al. (No. 782.) †

(Court of Civil Appeals of Texas. Amarillo. May 8, 1915. Rehearing Denied June 5, 1915.)

1. TAXATION ☞611 — ASSESSMENT — ACTION TO SET ASIDE ASSESSMENT—EVIDENCE.

In a suit by a railroad company to restrain collection of taxes, evidence *held* insufficient to show that the assessment against it was based upon full value of the property, while that against other property was based on a third of its value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. ☞611.]

2. TAXATION ☞611 — ASSESSMENT — VALUATION.

In a suit by a railroad company to restrain collection of taxes, evidence *held* insufficient to show an agreement by the board of equalization to undervalue certain property in violation of Const. art. 8, § 1, requiring all property to be taxed according to its value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. ☞611.]

Appeal from District Court, Carson County; F. P. Greever, Judge.

Suit by the Chicago, Rock Island & Gulf Railway Company against Fayette Ratliff and others to restrain the collection of certain taxes. From a judgment for defendants, plaintiff appeals. Affirmed.

N. H. Lassiter, of Ft. Worth, and Gustavus & Jackson, of Amarillo, for appellant. Reeder & Dooley, of Amarillo, and J. Sid O'Keefe, of Panhandle, for appellees.

HALL, J. Appellant railway company filed this suit March 12, 1914, against the county judge, county commissioners, and the tax collector of Carson county to restrain the collection of certain taxes assessed against it. Briefly stated, the railway company's claim is that it was the custom by common consent to assess property in Carson county for taxation on a basis of one-third of its actual value, and that the intangible property of the railway company, as determined by the state tax board was assessed at its full value in Carson county, and taxes were assessed against it and attempted to be collect-

ed on the basis of its full value instead of on the common basis of one-third of its value. This it is claimed amounted to a discrimination and lack of uniformity in taxation, operating against appellant, and from which it prayed to be relieved. The amount of this excess tax 'to be collected was alleged to be $1,700.59. The defendants denied that it was customary in Carson county to assess property at one-third of its real or fair market value, and claims that all property was assessed at its full and true value, except the property of the railway company in Carson county, which had probably been assessed at less than its full and true value, rather than overvalued by the board of equalization. There was a trial before the court, and from a judgment rendered against the plaintiff, this appeal is prosecuted.

Appellant offered evidence to show that the rough and unimproved lands of Carson county, adapted to grazing purposes, were of the reasonable value of $3 to $6 per acre, but that these lands were accepted for taxation purposes at from $1 to $2 per acre; that the better lands, smooth and improved and adapted to cultivation and in cultivation, were of the reasonable market value of $10 to $25 per acre, but that they were assessed at from $3 to $6 per acre. It was further alleged that the average value of lands throughout the county, belonging to resident owners, was $3.42 per acre, and for lands belonging to nonresidents, $2.41 per acre; that the horses and mules in said county were of good quality and in good condition, and worth from $100 to $200 per head; that the cattle were in the main of good breed and worth from $40 to $60 per head; that horses were assessed at an average value of $40 per head, and cattle at $13.41 per head.

[1] Nearly all of the assignments raise the question of the sufficiency of the evidence to support the court's judgment. The county judge and the county commissioners, who acted as the board of equalization, testified at great length with reference to the values of the real and personal property in the county on the 1st day of January, 1913. They stated that they had investigated the matters pertaining to the duties devolving upon them, and the result of their investigation was that no lands were selling about that date; that they had not been able to learn of any cash sales, and had concluded that land in that county on the 1st day of January had no market value. Then it was decided that under the law the board was required to assess the land at its real cash value; that 10 or 12 days were consumed in prosecuting their inquiries along this line; that the lands were first classified into plains land, rough or broken lands, raw lands, and improved lands, and when each individual piece of property was taken up in turn, the board considered its distance from town; its physical condition; whether it had any lakes, draws, or brakes; whether it was rough or smooth, and its condition with reference to improvements and passed upon each rendition separately; that after determining that the lands had no market value, then in ascertaining its true cash value, a number of elements were considered, among which was the rental value, and from a consideration of all these matters, assessed it at what they considered to be its full cash value; that the same course was followed in estimating the value of cattle, horses, and every other species of property taken up; that in determining the value of cattle, due consideration was paid to the condition of the cattle on January 1, 1913. Cattlemen appeared before the board and discussed values and answered inquiries. They stated that they did not take into consideration the prices at which cattle were sold for delivery later in the year; that on the 1st day of January, the cattle were poor and not in a marketable condition, and that practically no cattle were being shipped to market from that county at that time. The condition of the cattle required expense and trouble to carry them through the hard season, and the value assessed was what the members of the board thought the cattle were worth in their then condition under all the circumstances upon the 1st day of January. They found that there was no cash market value for horses at that time of the year, and decided that the only thing they could do was to estimate the true money value of the horses under all the conditions and circumstances. The county judge and each member of the board denied positively that there was any agreement or understanding that any of the property in the county should be assessed for anything less than its full cash value or its full market value on the 1st day of January, 1913. Appellant attacks this position by a great deal of testimony, some of which tends to show that the market value of the various kinds of property, as well as its real value on the 1st day of January, was more than its value as fixed by the board of equalization and listed by the assessor. The effect of this testimony is simply to raise an issue of fact, which has been decided by the trial judge against appellant. One or two witnesses for appellant testified that two of the commissioners had stated that they were making an effort to equalize property in the county at one-third of its value. The commissioners denied this statement. It was admitted by some of appellant's witnesses on the question of value that only one section of land had sold during the year 1913; that no settlers had come into the county during the previous year for the purpose of acquiring homes; that about the 1st day of January, 1913, conditions were rather serious, as there had been practically a crop failure in 1912, and that the future of the country was thereby rendered uncertain. As declared in Lively v. M., K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852. If an undervaluation of

certain property in the county is made with a deliberately adopted policy and other property is assessed at its full valuation, it is a violation of Const. art. 8, § 1, requiring all property to be taxed in proportion to its value.

[2] There is certainly no direct evidence in this case of any agreement or design on the part of the board of equalization to violate the law in this particular, and while it may be inferred that lands and possibly personal property have been listed at something less than we might declare to be its actual value, the trial judge having held otherwise, we are not authorized to reverse his decision. No arbitrary or fraudulent discrimination has been shown upon the part of the commissioner's court in the performance of their duties.

Appellee insists that even though the evidence should show a low valuation upon the property of individuals in the county, that the board of equalization has also placed a value on appellant's property proportionately lower than that placed on property generally; and in support of this contention they show that, according to a computation made by the railroad commission in 1910, the value of appellant's property in Carson county was $423,890.25. According to the statement filed by appellant's officials with the tax commissioner of the state on February 12, 1913, betterments to the extent of 50 per cent. had been added to the value of appellant's property since the valuation made by the railroad commission; that the actual assessment against appellant for the year 1913, in Carson county, shows a valuation of tangible property amounting to $189,540; that its intangible property was valued at $268,515, and rolling stock of the value of $57,335, making a total of $515,390.

The court filed no findings of fact and conclusions of law, but, according to this evidence showing 31.59 miles of road in the county, a full valuation of appellant's property for 1913 would have been $635,677.05. We are inclined to the view that this contention merits consideration. It is true appellant's property, as listed, is not affected by unfavorable crop conditions in the same proportion as would be the real estate and personal property belonging to the individuals of the county.

We have carefully reviewed all the evidence, and while the rendition is not exactly as we would have made it, appellant has not presented such a case as would warrant this court in reversing the judgment.

It is contended under the sixth assignment that the board of equalization acted upon false, illegal, and unauthorized circumstances, in deciding that lands, cattle, horses, and other property had no cash market value on January 1, 1913, and in holding that such properties should be valued upon their revenue producing qualities. As heretofore stated, the county judge and commissioners decided that there was no cash market value for such property on that date, and that its real value must be the basis of the assessment. We think the court did not err in arriving at what was a fair cash value for the property in taking into consideration the rental value of the land and the revenue producing qualities of all property. Lufkin Land & Lbr. Co. v. Noble, 127 S. W. 1093.

The judgment is affirmed.

