## CITY OF BRECKENRIDGE v. PIERCE et al. (No. 10488.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 17, 1923. Rehearing Denied April 7, 1923.)

1. Courts ⬦120, 155—Petition to enjoin collection of real estate taxes held sufficient to give district court jurisdiction.

Petition to restrain collection of taxes on real estate, on the ground that petitioners' property had been assessed at double its reasonable cash value, contrary to the general custom of assessing the values of like property in the city at 50 per cent. of its reasonable cash value, allegations that value of one petitioner worth $31,500 had been valued at $50,000, that property of the other petitioner worth $60,000 had been valued at $81,000, that the property of a third petitioner worth $12,500 had been valued at $18,500, and that property of like character had been assessed at about 50 per cent. of the value thereof, *held* to give the district court jurisdiction as against the contention that it did not appear that the amount of the excessive levy exceeded $500, since a mathematical calculation would show an excessive tax within the district court's jurisdiction, and since, under Rev. St. art. 958, a real estate tax constitutes a lien on the property.

2. Injunction ⬦148(2)—Court held not to have abused discretion in fixing amount of preliminary injunction bond.

In an action to enjoin collection of taxes on the ground that petitioners' property was given an excessive valuation, the court did not abuse its discretion in requiring, as a condition to the granting of a temporary injunction, a bond merely in the sum of $1,000, under Rev. St. art. 4654, though under the allegations of the petition, the amount of the excessive tax exceeded $500, and though ordinarily the bond should be double the amount of the judgment or value of the property, since the exact amount could not be ascertained until a hearing on the merits.

3. Taxation ⬦611(5)—Petition to enjoin collection of taxes held sufficient.

In an action to enjoin collection of real estate taxes, petition alleging that petitioners' property had been assessed at more than its reasonable value, contrary to an established custom of assessing property at less than its

reasonable value, and that the board of equalization "made a report and it was approved by the city of B. assessing each of plaintiff's property for taxation during the year 1922 for the amounts heretofore shown," *held* sufficient as against the contention that there was no allegation that the plaintiffs had appeared before the city equalization board and made an effort to collect the illegal assessment, in view of Rev. St. arts. 923–937, 945, 948, 950, 951, 953.

**4. Taxation ⬥611(5) — Allegation as to threatened enforcement of illegal taxes held sufficient, without allegation that city had made levy to enforce payment.**

Petition to enjoin collection of taxes by city, alleging that the defendants are threatening to enforce the collection of illegal taxes, *held* sufficient, without an allegation that the city had made a levy upon the property of the plaintiffs to enforce the payment of taxes, the threatened enforcement being sufficient to authorize the equitable interposition of the court.

**5. Taxation ⬥611(5)—Petition to enjoin collection of taxes without allegation that plaintiffs had failed to deposit any amount of taxes in court held sufficient to warrant granting of temporary injunction.**

Petition to enjoin collection of taxes, alleging that the "plaintiffs are ready and willing to pay taxes upon a fair and reasonable value tested by an equality and uniformity of all other property in the city," *held* sufficient to warrant order granting temporary injunction, without the actual deposit in court by plaintiffs of any amount of taxes.

**6. Taxation ⬥611(5)—Verification to petition to enjoin collection of taxes, signed by single petitioners, held sufficient.**

In a suit by several property owners to enjoin the collection of taxes, the petition was properly verified, where the verification was signed by each of the plaintiffs, and was to the effect that each swore that the facts alleged, which related to his particular ground for relief, were true.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Action by J. S. Pierce and others against the City of Breckenridge. From an order granting a temporary writ of injunction, the defendant appeals. Affirmed.

J. L. Goggans and T. Edgar Johnson, both of Breckenridge, for appellant.

T. B. Ridgell, of Breckenridge, for appellees.

CONNER, C. J. This appeal is from an order of the district court of the Forty-Second judicial district, granting a temporary writ of injunction against the city of Breckenridge, its mayor, commissioners, tax assessor, and collector of taxes, restraining those officers from the collection or attempting to collect certain taxes for the year 1922, and from making levies therefor or assessing penalties for refusing payment of such taxes,

etc. The petition for the injunction was presented by, and the writ granted in behalf of, J. S. Pierce, N. Winkler, and A. M. Bender. It was based upon allegations to the effect that their property had been assessed by the officers of the city and the board of equalization at double its reasonable cash value, contrary to its general custom of assessing the values of like property in said city at 50 per cent. of its reasonable cash value; that such assessment was illegally, fraudulently, and arbitrarily fixed and done pursuant to a definite system and design of imposing an unequal burden of taxation upon each of the plaintiffs, and operated as an unfair discrimination against them, and each of them, and deprived them, and each of them, of that equality and uniformity in the assessment of their property, to which they were entitled under the terms of the Constitution.

The disposition of this appeal is dependent upon the sufficiency of the petition for the temporary writ; the writ having been issued and this appeal taken without a hearing.

[1] Appellant insists that the petition fails to show that the district court had jurisdiction to issue the writ in that it is not made to appear that the amount of the excessive levy complained of exceeds $500. The plaintiff Bender alleged the value of the property owned by him, a description of which is set out in the petition, to be $31,500, and that it had been raised to $50,000. The plaintiff Winkler alleged the value of his property to be $60,000, which had been raised to $81,000. The plaintiff Pierce alleged the value of his property to be $12,500 and that it had been raised to $18,500. It was further alleged that other property of like character in the city of Breckenridge had been assessed for the purpose of taxation at about 50 per cent. of the value thereof, and that it will require, in order to meet the expenses of the city government, to fix the rate of taxation at about $2.50 per $100 of the valuation of property, if not to the full extent of the constitutional limitation. In view of these allegations, a simple mathematical calculation will show with sufficient certainty an excessive tax within the jurisdiction of the district court. Moreover, by reference to article 958, Rev. Statutes, it will be seen that all taxes constitute a lien upon property upon which they are assessed, and, among the properties enumerated by the plaintiffs, each describes real estate, and it needs no citation of authority for the statement that the county court, under the jurisdiction given it, would have no power to declare a lien thereon.

[2] By several assignments it is insisted that the bond required and given in this case was insufficient to authorize the court's order. The issuance of the writ, conditioned

---

upon the execution of a bond in the sum of $1,000, in terms required by law, to be approved by the clerk of the court. Such bond was given, and we are of the opinion that we should not set aside the court's order merely on the ground of the insufficiency of the bond.

Article 4654, Rev. Statutes, provides that:

"Upon the filing of the petition and order of the judge hereinbefore provided for, in the proper court, and before the issuance of the writ of injunction, the complainant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by such clerk, in such sum as may be affixed in the order of the judge granting the writ."

Ordinarily it is true that, where it is sought to enjoin a judgment for a specific amount, or the sale of property of an ascertained value, the bond should be double the amount of the judgment or value of the property, but it is apparent from the allegations of the petition that, until a final hearing, and the temporary writ is made to operate only until then, the exact amount in controversy cannot be determined. It may be on final hearing that values other than those alleged by the plaintiffs will be proven and that the excess in valuation may not be as large as is perhaps justified under the allegations of the petition. In view, therefore, of the nature of this case and of the article of the statutes to which we have referred, we do not feel that the judge ordering the writ so abused his discretion in fixing the amount of the bond as to require a setting aside of the writ.

[3] The petition is further attacked on the ground that the plaintiff failed to allege that they had appeared before the city equalization board and there made an effort to correct the illegal assessment complained of, and hence have failed to show that they had exhausted their legal remedies as required by law, in order to show a right to the writ. It is true there is no specific allegation that plaintiffs, or either of them, made any effort before the city board of equalization to correct the alleged illegal assessments. The petition, however, among other things, alleges:

That "the acts of the defendants and board of equalization, in raising plaintiff Pierce's said lot and building to $25,000 for taxation was unfair and unjust. * * * That the said officers and board of equalization, in the assessment of other property in the city of Breckenridge and especially resident lots, houses, and property, did assess same for the purpose of taxation in the city of Breckenridge at about 50 per cent. of the value of said property. * * * That they are informed that the action of the city of Breckenridge and its officers, defendants herein, as well as the board of equalization has established and pursued a custom of assessing property in the city of Breckenridge for taxation of about 50 per cent. of its cash market value, and that it has become a general established and uniform custom for a long

period of time prior thereto to assess property at less than its reasonable cash market value in the city of Breckenridge. * * * Whereas, they have assessed each of the plaintiffs' real and personal property as set out herein at more than its reasonable cash market value. * * * That said board made a report, and it was approved by the city of Breckenridge assessing each of the plaintiffs' property for taxation during the year 1922 for the amounts heretofore shown. * * * That plaintiffs rendered the property for taxation to the tax assessor of the city of Breckenridge and that the tax assessor transmitted such renditions to the board of equalization. That the board of equalization raised them, and that this raising was not founded upon any proof, facts, or witness and in this respect the board of equalization acted illegally, arbitrarily, and contrary to law."

Chapter 6, and following, of title 22, Rev. Statutes, relating to taxation and to the assessment and collection of taxes in cities incorporated under the general rules of this state, such as we assume is the case of the city of Breckenridge, provides that the city council, by ordinance, has power to annually levy and collect taxes not exceeding one-fourth of 1 per cent. of the assessed value on all real and personal property in the city that is not exempt from taxation. An assessor and collector is provided for, and the duties of the assessor prescribed.

Article 945, of chapter 7, of the title, provides for the appointment of an equalization board with duties as in subsequent articles specified. Among others, it is provided (article 948) that the board of equalization shall equalize as near as possible the value of all improved lots within the corporate limits of their city, having reference to the size and location of said lots and the improvements thereon, and shall equalize the value of unimproved lots as near as possible, having reference to the size and location thereof, and all other property of the same kind shall be made as nearly equal as possible. Any person may file with said board, at any time before the final action of said board, a complaint as to the assessment of his or any other person's property, and said board shall hear said complaint, and said complainant shall have the right to have witnesses summoned in sustaining said complaint, etc.

Article 950 provides that, in all cases where the board of equalization shall find it their duty to raise the value of any property appearing on the lists or books of the assessor, they shall, after having fully examined such lists or books and corrected all errors appearing therein, fix a day as specified in the order and give notice to the owner or person rendering the property to appear and show cause why the value of said property should not be raised, etc.

Article 951 provides:

"The board of equalization shall meet at the time specified in said order of adjournment,

and shall hear all persons the value of whose property has been raised, and, if said board is satisfied they have raised the value of such property too high, they shall lower the same to its proper value."

Article 953 provides:

"The action of said board at the meeting provided for in article 951 shall be final, and shall not be subject to revision by said board or by any other tribunal thereafter."

In view of these articles and of the allegations of the petition, and particularly of the specific allegation to the effect that the board of equalization "made a report and it was approved by the city of Breckenridge assessing each of plaintiffs' property for taxation during the year 1922 for the amounts heretofore shown," it would seem to have been beyond the power of the board to afford relief after its final action and approval by the city, and plaintiffs were not required to do a vain thing. See Brown v. First Nat. Bank (Tex. Civ. App.) 175 S. W. 1122; Lively v. M., K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852.

[4, 5] The petition fails to allege that the city has made a levy upon the property of plaintiffs to enforce the payment of taxes assessed against said property, and also fails to deposit into court any amount of taxes, and appellant urges that, because of such failures, the order granting the writ should be abated. The petition, however, does allege "that the defendants are threatening to enforce the collection of the illegal taxes" and that the "plaintiffs are ready and willing to pay taxes upon a fair and reasonable value, tested by an equality and uniformity of all other property in the city of Breckenridge." In the case of Chicora Fertilizer Co. v. Dunan, 91 Md. 144, 46 Atl. 347, 50 L. R. A. 401, by the Maryland Court of Appeals, it was held that the technical rules governing pleas of tender in actions of law are inapplicable in equity, and this decision is quoted with approval in 26 R. C. L. p. 658, § 43, and the principle, as it seems to us, is applicable here. As before observed, there has been, as yet, no final determination of the exact amount of taxes that plaintiffs, under the rule of equality and uniformity of taxation, are bound to pay, and it is certainly true that, upon the ascertainment of those facts, the court in its decree can condition the plaintiffs' relief upon the payment into court or to the proper authorities the amount ascertained to be due from them; so that we think the offer to pay, which we have quoted, will, under the circumstances of this case, be sufficient. And if the allegations of the petition are true, and they must be so accepted for the purpose of this appeal, we think the threatened enforcement authorized the equitable interposition of the court by its temporary writ of injunction.

[6] The further objections that the petition was not sufficiently verified and the prayer not sufficiently comprehensive to authorize the writ of temporary injunction as contradistinguished from a final one, have been considered, but we think there is nothing substantial in those objections. We think it clear that the prayer distinguishes the two classes of writs and indicates the desire of the pleader for a temporary writ to operate until a final hearing, upon which they pray that the writ of injunction may be made permanent. The verification, which is signed by each of the plaintiffs, is to the effect that each swears that the facts alleged which relate to his particular ground for relief are true, and this, we think, is sufficient. The general principles involved have been so frequently and fully discussed that we deem it unnecessary to state them, further than to say equality and uniformity of taxation is imperative under our Constitution. See Lively v. M., K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852; Brown v. First Natl. Bank (Tex. Civ. App.) 175 S. W. 1122; Porter v. Langley (Tex. Civ. App.) 155 S. W. 1042; City of Houston v. Baker (Tex. Civ. App.) 178 S. W. 820; City of Sweetwater v. Biard Development Co. (Tex. Civ. App.) 203 S. W. 801.

On the whole, we conclude that all assignments of error should be overruled, and the judgment affirmed.