**PARKER COUNTY et al., Appellants,**

v.

**SPINDLETOP OIL AND GAS COMPANY, a Texas Partnership, Appellee.**

No. 18417.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 12, 1981.

Rehearing Denied March 12, 1981.

Fred Barker, County Atty., Parker County, Weatherford, Eskew, Muir & Bednar, and Doren R. Eskew, Austin, for appellants.

Kammerman, Yeakel & Overstreet, and Adrian M. Overstreet and Mark T. Mitchell, Austin, for appellee.

## OPINION

SPURLOCK, Justice.

Spindletop Oil & Gas Company, for itself and as representative of a class, brought this ad valorem tax suit. Plaintiffs claimed their property was taxed at 100% of market value while other real estate in the taxing jurisdiction was taxed at only a fraction of its true value. Plaintiffs prayed that the taxing authorities be enjoined from certifying the tax roll and implementing the roll until all property has been placed on the roll at its true value. The plaintiffs obtained a judgment from which the taxing authorities appeal.

We affirm.

Spindletop filed this suit against Parker County, et al., and Garner Independent School District, et al. (hereafter referred to as defendants) and obtained a temporary injunction enjoining these taxing authorities from taking any further action to certify or implement the tax roll of defendants for the year 1979. Spindletop filed a motion under Tex.R.Civ.P. 42(a) and 42(b), subdiv. (2), to obtain permission to maintain this suit as a class action on behalf of itself and all others similarly situated. After a full hearing the motion was granted. The evidence heard on the hearing on this motion is not in the statement of facts, and although argued in both brief and oral submission, no point of error attacking the class certification was raised.

A temporary injunction was issued which restrained the defendants from certifying a tax roll or implementing a tax plan until all properties in the district were assessed at fair market value as required by law. The court found that an appraisal firm employed by the defendants had appraised the oil and gas properties at their fair market value for the purpose of the 1979 tax rolls and that defendants had pursued a deliberate plan or course of action to value the mineral interest at its full value and other real property at substantially less than fair market value, thus the owners of the mineral interest were liable to pay a disproportionate share of the tax burden of the 1979 tax roll. The trial court concluded that the mineral owners being assessed a disproportionate share of the tax burden resulted in substantial harm to them.

Defendants filed a counter claim for taxes. Suit therefor was dismissed because no service was obtained on Spindletop or the plaintiff class and there was no waiver. The court ruled that defendants still possessed the right to bring a claim individually against each person owing delinquent taxes. Judgment was rendered that each member of the class must pay the 1979 taxes as assessed within sixty days from the date of the judgment and if paid by then, no penalty would be incurred. The judgment further provided that each class member would be given a credit of 50% of such member's 1979 assessed taxes by these defendants and that 49% would be a reduction against the 1980 taxes, with 1% to be paid by the County to the plaintiffs to reimburse them for their cost and legal fees.

Costs were assessed against defendants except the cost incurred in compiling the list of class members, which costs were to be paid by the plaintiffs.

Defendants contend by point of error number one that the trial court erred in overruling their plea in abatement and "in granting an injunction to plaintiffs who refused to tender payment of any of the taxes admitted to be owed." Among other things, defendants contend that plaintiffs refused to do equity by tendering the taxes which were owed, and, therefore, they were not before the court with clean hands.

This is not a suit in the nature of a collateral attack but is a direct attack on the plan used by defendants before the plan was placed into effect. The taxing procedure is that the tax assessor-collector would prepare a tentative tax roll and then submit it to the Commissioners Court. After action, if sought, by the Board of Equalization (composed in Parker County of the Commissioners Court sitting as the Board), the Commissioners Court would then place the values upon the property and certify the roll upon which property was assessed. After the defendants set the rate for the year involved, tax bills would be mailed out.

It is the established rule of law in this state that in a precertification attack, a finding of illegality with reference to a plan of taxation precludes the enforcement of that assessment as to those substantially injured by it. *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569 (1954); *Atlantic Richfield Co. v. Warren Ind. Sch. Dist.*, 453 S.W.2d 190 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.). Where the suit is a direct attack upon the plan before certification of the roll, the tender of assessed taxes is not a condition to the granting of injunctive relief. No taxes were due at this time, and it would be impossible for the taxpayer to accurately or legally compute the tax. At the time this suit was filed, the tax rate had not even been set. The distinctions between precertification and postcertification tax suits and the differences in the burden of proof are clearly made in *Atlantic Richfield Co. v. Warren Ind. Sch. Dist.*, supra. See also *City of Arlington v. Cannon*, 153 Tex. 566, 271 S.W.2d 414 (1954).

This point of error is overruled.

By its points of error numbers nine, ten, eleven and twelve, defendants raise four evidentiary points dealing with the court's holdings that mineral properties were made to bear a disproportionate share of the 1979 tax burdens and that there was a deliberate plan to not assess the market value of mineral interests equally and uniformly with other property. The tax assessor-collector,

a representative of the firm which assessed mineral properties only, and members of the Commissioners Court testified as to defendants' plan, its implementation, and the acknowledged disparity in how different kinds of property in Parker County were valued. The court also heard testimony from Spindletop as to how it arrived at the values it rendered for its mineral properties.

The tax assessor testified that the last time real property had been reappraised county-wide was in 1959 and that values had increased substantially since then. Mineral properties had been evaluated annually in recent years, and the assessor believed that mineral properties had been appraised at fair market value. The tax assessor testified that the 1979 valuations for real estate were not correct and that reappraisal was required in order to equalize the treatment received by owners of different kinds of property.

A specialist in appraisal methods testified that, in his opinion, Parker County real estate appreciated in value an average of 14% annually and that more frequent reappraisal of oil and gas property was required because of the nature of the properties. County commissioners testified that real estate evaluations were too low and that land was carried on the tax roll way below market value. The superintendent of schools testified that his land was carried on the tax roll at one-half the amount he had paid for it in 1970. The county contracted with an appraisal firm to handle oil and gas properties only, although there was no testimony contradicting the acknowledged fact that real estate properties clearly needed to be reappraised.

■ Tex.Const. art. VIII, sec. 1 requires: "Taxation shall be equal and uniform." The term "value", as used in the Constitution, means the reasonable cash market value. *Lively v. Missouri, K. & T. Ry. Co. of Texas*, 102 Tex. 545, 120 S.W. 852, 856 (1909). As stated in *Atlantic Richfield Co. v. Warren Ind. Sch. Dist., supra*, 453 S.W.2d 190, 197.

"No taxing agency is authorized to assess property without regard to its fair market value. The adoption of a plan of assessment without regard to market value, which results in one class of property bearing a disproportionate share of the tax burden is fundamentally erroneous."

■ Appraisal of fair market value is clearly a spread, but the evidence in this case is overwhelming that the county and school district continued to use a tax plan known to be discriminatory against owners of mineral interests.

Defendants' no evidence and insufficient evidence points are overruled.

Defendants in their second point of error claim the trial court erred in granting injunctive relief not prayed for or supported by the application for injunction. The plaintiffs fully pleaded all the facts and then prayed:

"[T]hat upon final hearing hereof, the court continue to make such injunction, restraining, prohibiting, and enjoining the Defendants individually and collectively, and all persons acting in concert and participation with them, from certifying or implementing the tax roll of Parker County and/or the Garner Independent School District, until all taxable property is placed thereon at its full fair market value. Plaintiffs further pray that this court issue a mandatory injunction, or in the alternative a writ of mandamus, or both, compelling the above referenced officials to do their official duties as prescribed by the statutes of this State.

"Further, Plaintiffs respectfully pray that this court grant such other relief, both special and general, which they may show themselves to be justly entitled."

This remedy was expressly approved in *City of Houston v. Baker*, 178 S.W. 820 (Tex.Civ.App.—Galveston 1915, writ ref'd).

■ The trial court may grant such relief as is consistent with the issues raised by the pleadings and supported by the evidence. The judgment was sustained on similar pleadings in *Texas & P. Ry. Co. v. Miller*,

171 S.W. 1069 (Tex.Civ.App.—El Paso 1914, no writ).

This point is overruled.

Defendants next assert by point of error number three that the trial court committed fundamental error in suspending the operation of the delinquent tax statute, being Tex.Rev.Civ.Stat.Ann. art. 7336, and that the court attempted to exercise legislative and executive powers.

■ When it is shown that the defendants had in effect an illegal plan and a scheme of taxation to violate the Constitution and the statutes, the court has authority and power to prohibit such plan and unequal taxation. *Whelan v. State*, 252 S.W.2d 271 (Tex.Civ.App.—Texarkana 1952, no writ); see also *Atlantic Richfield Co. v. Warren Ind. Sch. Dist., supra.* Furthermore, no delinquent taxes are involved.

Point three is overruled.

Defendants by their point of error number five contend that the trial court erred in dismissing its counter claim for delinquent taxes.

The trial court filed extensive findings of fact and conclusions of law. Findings of facts nos. 41, 42 and 43 state that the defendants failed to obtain service on the plaintiffs on their counter claim, that plaintiffs did not waive service of the counter claim, and that plaintiffs did not appear in any manner whatsoever on the defendants' counter claim. These findings of fact were never challenged.

When this class action suit was filed no taxes were due and there had been no certification of the tax rolls; therefore no delinquent taxes were due.

The cross plaintiffs filed no motion to certify the plaintiffs as a class for the purpose of defending a tax suit as defendants.

■ Whether a party or parties can be the proper representative of a class so that the interests of other class members will be adequately represented is a matter addressed to the sound discretion of the trial judge, although his determination is subject to review. *Brittian v. General Tel. Co. of Southwest*, 533 S.W.2d 886 (Tex.Civ.App.—Fort Worth 1976, writ dism'd).

■ We hold that the trial judge did not abuse his discretion in dismissing the counter claim.

This point of error is overruled.

By point of error number six, defendants allege the court erred in awarding court costs against it contrary to Tex.Rev.Civ. Stat.Ann. arts. 7297, 7333 and 7343 (1960).

■ Tex.R.Civ.P. 131 provides that the successful party to a suit shall recover of his adversary all costs incurred therein, except as otherwise provided. Plaintiffs were successful in this suit and therefore the court assessed costs against the defendants. Costs may be assessed against political subdivisions of this state, and it is well established that government subdivisions are not immune from the general application of the rule that court costs should be assessed against the losing party. In *Glass v. Great Southern Life Ins. Co.*, 170 S.W.2d 247, 249 (Tex.Civ.App.—Galveston 1943, writ ref'd w. o. m.), that court held: "It has been uniformly held that where the State enters the courts as a litigant it places itself upon the same basis as any other litigant and costs made be taxed against it. *Ibanez v. State*, Tex.Civ.App., 123 S.W.2d 704." In *Garrett v. City of Wichita Falls*, 334 S.W.2d 624, 626 (Tex.Civ.App.—Fort Worth 1960, no writ), in an opinion by Chief Justice Massey, this court held that since this suit is one in tort, it is not an action wherein any statute would exempt a municipality from obligation to pay costs. See also *Childs v. Reunion Bank*, 587 S.W.2d 466 (Tex.Civ. App.—Dallas 1979, writ ref'd n. r. e.).

■ The question arises then as to whether the three statutes named above exempt the defendants from payment of costs. Tex.Rev.Civ.Stat.Ann. art. 7297 (1960) provides that the counties shall not be liable for costs in a suit for the recovery of money due the state and county as taxes. Tex.Rev.Civ.Stat.Ann. art. 7333 (1960) provides that in suits to collect taxes the state and county are not liable for costs but the costs shall be paid out of the sale of the

property. Tex.Rev.Civ.Stat.Ann. art. 7343 (1960) provides for the collection of delinquent taxes by cities and independent school districts.

The suit before us is a suit in the nature of an injunction or mandamus and is not a suit to collect taxes. No sale of property is involved. The defendants therefore come under the general rule providing for costs to be taxed against the losing party.

This point is overruled.

By their seventh point of error, the defendants assert the trial court erred in awarding legal fees to Spindletop and the plaintiff class out of the defendants' tax revenues.

The court, by its finding of fact no. 11, found that the school district has contracted with Parker County and the officials thereof to assess and collect taxes on properties within the school district.

By findings of fact nos. 18, 19 and 20 the trial court found the following:

"18) The real property, other than mineral interests, located within Parker County and the Garner Independent School District was not valued at its fair market value by the Defendants and the officials thereof for purposes of the 1979 tax roll of said county and district.

"19) The value per acre of real property in Parker County and the Garner Independent School District is, in general, approximately twice the one hundred percent value shown on the tax rolls of the Defendants.

"20) The value of oil and gas properties on the 1979 tax roll is one hundred percent of market value while the value of real property on the 1979 tax roll is less than fifty percent of market value."

The court also found that the oil and gas properties on the tax rolls were assessed at their full market value. None of these findings of fact was challenged by the defendants.

The court, in its judgment, ordered notice to be sent to each member of the class advising them to pay the 1979 taxes within sixty days of the judgment and after that period, if they were unpaid, the appropriate penalties could be imposed. The judgment also provided that each class member should be notified that each would be given a credit of 50% of such member's assessed 1979 taxes by the defendants in that 49% of such taxes would be a reduction against 1980 taxes with 1% to be paid by the county to the plaintiffs to reimburse them for their costs and legal fees. The judgment further provided as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Parker County's and/or the Garner Independent School District's 1979 tax roll be certified, conditioned upon the imposition of the abovementioned credits against the assessed taxes for the tax year 1980 for each member of the class.

"Further, it is ORDERED, ADJUDGED AND DECREED that Parker County and/or the Garner Independent School District and the officials thereof must reappraise *all* taxable property located within such county and district for the 1980 tax year, so that all taxable property be appraised for purposes of the 1980 tax rolls of such county and district at its fair market value.

"It is further ORDERED that Defendants shall pay all costs of court in this behalf expended, except the actual cost incurred of compiling a list of the class members, such cost to be paid by the Plaintiff.

"It is, further, ORDERED, ADJUDGED AND DECREED that the cost to be paid by the Plaintiff on behalf of this suit, i. e. the actual cost of compiling a list of the class, as certified by this Court, plus reasonable attorney's fees incurred by Plaintiff of 1% of the 1979 mineral tax roll of those members of the class be paid by contribution of the class through a pro rata deduction of the credit to be applied to each class member's 1980 taxes, such pro rata contribution to be collected by the taxing authorities of Parker County and/or the Garner Independent School District, according to the 1979 tax roll of said county and district,

upon payment of the 1979 taxes by a portion of the class members, and to be remitted to the Plaintiff upon the collection of enough taxes to equal the total amount to be reimbursed to Plaintiff." The effect of this judgment was not to assess attorney fees against the defendants but to provide for the allowance from the portion of the recovery already due to plaintiffs to be set aside to pay attorney fees and costs. The provision is similar with the situation in a tort case where the plaintiffs assign a portion of the recovery to their attorneys as their fees. When the judgment is paid the attorneys then receive their percentage of the recovery of the judgment.

The courts have allowed the recovery of attorney fees in the successful prosecution of class action suits. This is in addition to the recovery of a monetary benefit. See *Adler v. Brooks*, 375 S.W.2d 544 (Tex.Civ. App.—Tyler 1964, writ ref'd n. r. e.); *Modern Optics, Inc. v. Buck*, 336 S.W.2d 857 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.).

The judgment did not award attorney fees against the defendants but simply provided a method of payment out of the benefits gained by the plaintiffs.

This point is overruled.

In its remaining points of error (numbers four, twelve, thirteen and fourteen) the defendants assert that the trial court erred in the remedy it fashioned, which is likewise attacked by the appellees. Plaintiffs' point of error asserts that the trial court erred by permitting 1979 taxes to be assessed and collected prior to complete reassessment at full market value of all taxable property in Parker County. By its fourth point of error, defendants urge that the trial court committed fundamental error in exercising legislative and executive powers by creating a judicial ad valorem tax assessment system in violation of Tex.Rev.Civ.Stat. Ann. art. 7336 (1960) and Tex.Const. art. II, sec. 1.

Art. II, sec. 1, deals with the division of authority among the three branches of government. Judicial review of taxation, however, is well established. Furthermore, the injunction and judgment are consistent with the Constitution and statutes of this state. Tex.Const. art. VIII, sec. 1 requires that: "Taxation shall be equal and uniform." Defendants were ordered by the trial court to do what it had been obligated to do from the beginning— to assess and collect taxes on all properties, including mineral ones, equally. As noted above (supra, point of error number seven) the trial court's findings that mineral properties were carried on the tax rolls at full market values while other properties' true values were actually approximately twice their assessed values remain unchallenged. These findings, which are supported by the evidence, and the trial court's judgment are consistent.

The Supreme Court in *Electra Independent Sch. Dist. v. W. T. Waggoner Estate*, 140 Tex. 483, 168 S.W.2d 645, 652 (1943), a suit for delinquent taxes, stated:

"The courts have no power to revalue and reassess property for taxation.... It has been ruled that where a taxpayer has been discriminated against by the assessment of his property at its full value and the property of all others has been assessed at a value of 66⅔ per cent of its full value, a court of equity for the purposes of adjusting the rights of the parties will reduce the assessment to the same proportion of value as was placed upon all other property assessed, thereby through a mathematical calculation remove the discrimination prohibited by the constitution. *Lively et al. v. Missouri K. & T. R. Co. of Texas*, 102 Tex. 545, 120 S.W. 852...."

No reassessment for 1979 is herein ordered. The trial court found in its findings of fact that mineral properties were assessed at true market value while other properties were assessed at less than 50 percent. The judgment is based on existing assessments made by the tax assessor and collector. In this case, the trial judge followed the principles announced in *Lively, supra*, and reaffirmed in *Electra, supra*. Only the percentages differ.

Defendants also claim the judgment violates Tex.Rev.Civ.Stat.Ann. art. 7346 (1960), which states:

"Property omitted from rolls

"Whenever any commissioners court shall discover through notice from the tax collector or otherwise that any real property has been omitted from the tax rolls for any year or years since 1884, or shall find that any previous assessments on any real property for the years mentioned are invalid, or have been declared invalid for any reason by any district court *in a suit to enforce the collection of taxes on said properties,* they may, at any meeting of the court, order a list of such properties to be made in triplicate and fix a compensation therefor; . . . ." (Emphasis added.)

At the time this suit was filed, there were no delinquent taxes involved. Art. 7346 deals specifically with suits to enforce the collection of taxes. By the time this case was tried, defendants had filed a counter claim which was never properly served. Since there was no appearance and service was not waived, the counter claim was dismissed. Though we agree with the court's reasoning in *Seguin Independent School District v. Blumberg,* 402 S.W.2d 552 (Tex. Civ.App.—San Antonio 1966, writ ref'd n. r. e.), the same situation is not involved in the case at bar because defendants' counter claim was properly dismissed. The court in *Seguin, supra,* reversed and remanded that precertification case and noted that the Supreme Court in *Electra, supra,* stated that whether or not art. 7346 applies to injunction cases did not then need to be determined. The *Seguin* court continued at 558:

"To permit reassessment by the taxing agencies in this case would work no greater hardship on the taxpayer than does the rule, approved by the Supreme Court, which allows such reassessment where the suit is one for the collection of delinquent taxes."

In the case at bar, neither party has attacked the finding that the mineral properties were valued at full fair market value while the other real estate was actually worth approximately twice its assessed value. That finding supports the judgment.

Point of error number four is overruled, as is plaintiff's single point of error.

Defendants' twelfth point of error also alleges fundamental error in the court's ordering the 1980 taxes of all class members be reduced by 50% of that member's 1979 taxes. Regardless of how this provision is worded, the trial court in its judgment was requiring payment within 60 days of the 1979 taxes as assessed, with 50% of that constituting a pre-payment of 1980 taxes which were to be assessed after a county-wide reappraisal system had been accomplished with all properties listed on the tax rolls at full fair market value. As of the date the order was signed, May 22, 1980, no 1980 taxes were due. This provision, therefore, if it is unjust to anyone, is unjust to the plaintiff/appellees, Spindletop and the members of the class of mineral owners which Spindletop represents. Although appellees did raise a point of error, that point dealt only with the trial court's using a mathematical formula to reduce the amount of tax paid by these mineral owners instead of complete county-wide reassessment for *1979* taxes; no error was asserted concerning the 1980 prepayment. The error, if any, was harmless error, especially since it could only be harmful to those paying taxes in advance rather than to the taxing authorities which received adequate funding for 1979 despite the proven inequitable assessments.

Defendants' twelfth point of error is overruled.

Points of error numbers thirteen and fourteen allege the trial court erred by ordering a reduction of 1980 taxes by 50% of the 1979 taxes because there was no pleading and no evidence or insufficient evidence to support the judgment. The evidentiary issues have already been discussed in full. In addition to the findings of fact quoted above, the trial court further found that: (32) "If the 1979 tax roll of Parker County and the Garner Independent School District, as submitted to the Board of Equalization and introduced into evidence,

were certified, the Plaintiffs, ... would be required to pay substantially more than their fair share of taxes. Specifically, for each $100.00 valuation on said tax roll, they would be liable to pay at least twice the tax as would a person owning real property, other than oil and gas property, of the same amount by dollar value at its fair market value."

The plaintiffs pleaded for all other relief, both general and special, to which they were entitled. The court, after hearing all the evidence and considering the facts and the situations of all the parties, fashioned a remedy particularly tailored to fit the needs of the parties. The court ordered *all* county property to be assessed at full market value for 1980. The trial court's remedy is appropriate when the record and evidence presented in this case are considered.

These points are overruled.

Each of the defendants' points of error has been considered and is overruled. Plaintiffs' single point of error has also been considered and is overruled.

Judgment of the trial court is affirmed.